UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR 01-113-01 T
:
JOSEPH NIXON :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Joseph Nixon ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was conducted on April 6, 2006. At that time, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of twelve (12) months. I further recommend that Defendant be placed in the "Habilitation Program" offered at the Federal Correctional Institution in Butner, North Carolina.

**Background**

On November 15, 2002, Defendant appeared before Chief United States District Judge Ernest C. Torres after pleading guilty to one count of mailing threatening communications involving the use of explosives. Judgment of 11/15/02 (Document ("Doc.") #14) at 1. Defendant was sentenced to thirty-three months imprisonment to be followed by three years of supervised release. Id. at 2-3. As special conditions of release, Defendant was ordered to

participate in an inpatient or outpatient mental health treatment program and a substance abuse counseling program, take all prescribed medications, and not have any contact with the victims or go on the premises of any Jewish synagogue in the State of Rhode Island. Judgment of 11/15/02 at 4. A special assessment of $100 was also imposed. Id. at 5.

On May 28, 2004, Defendant appeared before Chief Judge Torres after admitting to four violations of his supervised release. Defendant was sentenced to twelve months imprisonment with twenty-four months of supervised release to follow. Judgment of 5/28/04 (Doc. #31) at 1-3. As special conditions of release, Defendant was ordered to complete an inpatient or outpatient substance abuse treatment program, submit to up to seventy-two drug tests per year, participate in and satisfactorily complete a mental health treatment program approved by the probation office, refrain from any contact with Cynthia Sprague or her family, and have no contact with any Jewish synagogue or any individuals who attend it. Id. at 4.

Supervised release commenced on January 28, 2005, with an expiration date of January 27, 2007. Amended Supervised Release Violation Report (the "Amended Report") at 1. On or about July 6, 2005, Senior U.S. Probation Officer Brian Pletcher ("U.S.P.O. Pletcher") initiated a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated two conditions of his supervised release. See Petition. In response to the Petition, Chief Judge Torres ordered the issuance of a summons, see id. at 2, and on July 15, 2005, a summons was issued directing Defendant to appear on August 9, 2005, before Magistrate Judge Lincoln D. Almond to answer to the Petition, see Summons in a Criminal Case (Doc. #35). However, Defendant failed to appear for the August 9th hearing, and Judge

Almond issued an arrest warrant for him.[1] See Clerk's Entry for 8/9/05. On or about August 9, 2005, U.S.P.O Pletcher initiated an Amended Petition for Warrant for Offender under Supervision (Doc. #39). The Amended Petition alleged that Defendant had violated an additional condition of supervised release. See Doc. #39. After receiving the Amended Petition, Chief Judge Torres ordered the issuance of an arrest warrant on August 11, 2005. See id. at 3.

Almost eight months later, on March 8, 2006, Defendant was arrested on the warrant by the San Francisco Police Department. See Amended Supervised Release Violation Report signed by U.S.P.O. Pletcher on 3/20/06 ("Second Amended Violation Report")[2] at 3. On or about March 20, 2006, U.S.P.O Pletcher filed a second Amended Petition for Warrant for Offender Under Supervision (Doc. #42) ("Second Amended Petition"), alleging that Defendant had additionally violated supervised release by leaving the District of Rhode Island without permission. See Second Amended Petition at 2.

**The Violation**

The Second Amended Violation Report alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

After Defendant was denied treatment by the Providence

---

[1] The docket indicates that the summons was returned unexecuted by the U.S. Marshals on August 9, 2005, with a notation that Defendant could not be located. See Doc. #38.

[2] An Amended Supervised Release Violation Report had previously been prepared in August of 2005 in connection with the Amended Petition.

Center, he requested treatment through the probation office's contractors at the Community Counseling Center in Pawtucket, Rhode Island. The request was approved, and Defendant was instructed to report for an intake appointment on June 20, 2005, with counselor Robert Marshall. Defendant was scheduled for a follow-up appointment on June 28, 2005, and for a psychiatric evaluation on June 30, 2005. On June 28, 2005, Mr. Marshall called U.S.P.O Pletcher and advised that Defendant had failed to appear for his follow-up appointment. Subsequently, on June 30, 2005, Mr. Marshall advised U.S. Probation Officer Kathleen Hopkins that Defendant had also failed to report for his psychiatric evaluation. Defendant did not call to reschedule these appointments, and he was not excused by the probation officer.

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On July 8, 2005, Defendant was instructed to report to the probation office each Wednesday for drug testing and to report his residential status. Defendant failed to report as instructed on July 13, July 20, July 27, and August 3, 2005. As to this violation, on July 8, 2005, Defendant called the probation officer and advised that he had just been released from state custody on a warrant for failure to appear for a cost review. Defendant stated that he had surrendered over the July 4th weekend. Defendant was advised that he had failed to report for mental health treatment as directed and was instructed to report each Wednesday for drug testing and to advise the probation office of his residential status. However, Defendant failed to report as directed on the above-listed dates.

**Special Condition: Defendant shall participate as directed in a program of mental health treatment approved by the probation**

**office.**

As noted above, Defendant failed to report for a mental health treatment appointment on June 28, 2005, and also failed to report for a psychiatric evaluation on June 30, 2005. Defendant did not call the probation office to change these appointments, and he did not have approval to change his treatment program.

**Condition #1: Defendant shall not leave the judicial district without the permission of the Court or probation officer.**

On March 8, 2006, the probation officer was notified by Lt. Joseph Garrity of the San Francisco, California, Police Department that Defendant had been arrested on this District's violation warrant. Defendant did not request permission to leave the District and travel to California and did not have the permission of the Court or of the probation officer to leave the district.

Lt. Garrity advised the probation office that their department had received information that Defendant was residing in the Lake Tahoe/Nevada Lakes region of Nevada and that he frequently traveled to San Francisco. The San Francisco Police Department coordinated with the U.S. Marshals Service for the Northern District of California and successfully apprehended Defendant on March 8, 2006.

**Travel**

On March 23, 2006, Chief Judge Torres ordered the issuance of a warrant for Defendant to appear to answer to the Second Amended Petition. See Doc. #42 at 3. The warrant was executed, and Defendant appeared before this Magistrate Judge on April 6, 2006. At that time Defendant was advised of the Second Amended Petition and of the grounds for the alleged violations. Defendant, both personally and through counsel, waived a violation hearing and admitted to the violations. This admission satisfied the Court that there was an adequate basis for finding

that Defendant had violated the conditions of supervision. After receiving sentencing recommendations from both the Government and the defense and hearing from Defendant personally, the Court stated that it would recommend the sentence expressed in this Report and Recommendation.

## Law

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to Section 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the

offense that resulted in the term of supervised release was a class C felony. Here Defendant was on supervision for a Class C felony. Thus, he may not be required to serve more than two years imprisonment upon revocation. However, since Defendant has already served twelve months imprisonment as a result of one or more previous revocations, the statutory maximum term of imprisonment remaining is twelve months.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years), less any term of imprisonment imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation.

Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to Section 7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify supervision. Since Defendant has committed a Grade C violation, the Court may revoke or modify the conditions or supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The second provision, which allows for alternatives for one-half of the minimum term, applies to this matter.

According to Section 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent

confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement (although there is an outstanding special assessment of $100).

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is three years. A total of twelve months imprisonment has previously been imposed for a violation of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the twelve months previously imposed, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to Section 7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of IV at the time of sentencing. The Revocation Table contained in Section 7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of IV, an imprisonment

range of six to twelve months is warranted.[3]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

**Disposition**

**Recommendations By Government and Defense**

The Government recommended that the Court impose a sentence of twelve months imprisonment, the maximum term within the guideline range. In making this recommendation, Assistant United States Attorney Andrew Reich noted that this is Defendant's second violation of supervised release, that the violation was based on multiple grounds, and that the variety and repetitive nature of those grounds (i.e., not following the probation officer's instructions, not participating in a program of mental health treatment, and leaving the judicial district without permission) indicated that Defendant is not willing to comply with the terms and conditions of supervised release.

Defense counsel Edward Roy, acknowledging that his position recommendation was somewhat unusual, requested that the Court impose the sentence recommended by the Government. Mr. Roy explained that Defendant recognizes that he needs help and desires a sentence of twelve months in order to be admitted into the Habilitation Program.

Defendant was given the opportunity to speak regarding sentencing, and he did so. Defendant stated that he understood that he had violated the terms and conditions of his supervised release again. He noted that Chief Judge Torres had attempted to

[3] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

arrange for him to be placed in a treatment program while incarcerated, but that when he arrived at the facility he was informed that he did not have enough time remaining on his sentence to be admitted into the program. Defendant indicated that he wanted to participate in the Habilitation Program and requested that he be sentenced to twelve months imprisonment so that his sentence would be long enough to be allowed into this particular program.

**Court's Recommendation**

While it is unusual for a defendant to ask for imposition of the maximum sentence, in this instance the Court understands the reasons behind it. Defendant desires to be placed in a treatment program, and the Court is aware that some programs require that a defendant have a minimum amount of time remaining on his or her sentence in order to be eligible for admission. Accordingly, the Court will follow the joint recommendation of the Government and the defense and recommend a sentence of twelve months imprisonment. I further recommend that Defendant be allowed to participate in the Habilitation Program offered at the Federal Correctional Institution ("F.C.I.") in Butner, North Carolina. Lastly, I recommend that Defendant be ordered to pay the outstanding special assessment of $100.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment of twelve (12) months. I further recommend that Defendant be allowed to participate in the Habilitation Program offered at the F.C.I. in Butner, North Carolina. In addition, I recommend that he be ordered to pay the outstanding special assessment of $100.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten

(10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 12, 2006